PAMPA GRAIN CO. v. OKLAHOMA CITY MILL & ELEVATOR CO.

(Circuit Court of Appeals, Fifth Circuit. January 28, 1918. Rehearing Denied March 13, 1918.)

No. 3028.

SALES ☞202(6)—SALE OF GRAIN—TIME OF TAKING EFFECT—DELIVERY.

The buyer of wheat, in accordance with the rules of the Texas Wheat Growers' Association, wrote letters of confirmation, directing shipment to Galveston for export, and reciting: "Delivery of grain not perfected until grain reaches destination and has been inspected and weighed." The seller, having signed and returned such letters of confirmation, loaded the grain for shipment; bills of lading being issued to the seller, with directions to notify the buyer. Drafts attached to the bills of lading were paid by the buyer on presentation; the bills of lading being delivered to the buyer. *Held*, that title then passed to the buyer, notwithstanding want of inspection and weighing, for there may be a sale without completed delivery, so that loss of the grain in a flood at Galveston must fall on the buyer.

Walker, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action by the Oklahoma City Mill & Elevator Company against the

Pampa Grain Company. There was a judgment for plaintiff (237 Fed. 715), and defendant brings error. Reversed and remanded.

W. H. Kimbrough, R. E. Underwood, and M. J. R. Jackson, all of Amarillo, Tex., for plaintiff in error.

Frank Wells, J. R. Keaton, and D. I. Johnston, all of Oklahoma City, Okl., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. The Pampa Grain Company sold to the Oklahoma City Mill & Elevator Company two lots of wheat, of 6,000 bushels and 15,000 bushels; the Elevator Company being represented in the transaction by Kent Barber, and Tom F. Connally, and the Pampa Grain Company by A. C. Matthews. Immediately after the transaction between these representatives of the concerns, and in accordance with the practice resulting from an observance of the rules of the Texas Wheat Growers' Association, the Oklahoma City Mill & Elevator Company wrote letters of confirmation, which were signed by the Pampa Grain Company and returned. These letters constitute evidence of the contract between the parties. Pertinent provisions are:

"We confirm purchase from you to-day by Tom F. Connally of ———— capacity cars 6,000 bushels No. 2 hd. wheat at $1.18½ basis, delivered Galveston, shipment this week days via ————. Galveston weights and Galveston grades. Ship to S. O. Notify Oklahoma City Mill & E. Co., Galveston, for export. Care of Galveston Wharf Company Elevators.

"Please comply with routing requested. We reserve the right to change destination of shipment in transit. Draw on us at Oklahoma City, with shipper's order bill of lading attached, leaving sufficient margin to guarantee weights and grades. Shipper pays weighing, inspection, trackage, and exchange, if any. Delivery of grain not perfected until grain reaches destination specified and has been inspected and weighed. We reserve the right to unload off grades grain without first notifying you. On contract not filled in contract time we reserve the right to cancel, extend time or buy in for seller's account."

After the signatures:

"Lower grades to apply at the following discounts: No. 3, 58 or better, 1 cent off; 57, 2 cents off; 56, 3 cents off. * * * Rejected wheat, 58 lb. or better, 6 cents off; one cent additional off for each lb. below 58 lb. No-grade wheat, if merchantable, 58 lb. or better, 7 cents off," etc.

Immediately after the making of these contracts, the wheat was loaded on cars of the Atchison, Topeka & Santa Fé Railway Company, and bills of lading were issued to the Pampa Grain Company, "notify Oklahoma City Mill & Elevator Co., at Galveston, Texas." Drafts, with these bills of lading attached, were put in bank by the Pampa Grain Company, and, upon presentation, were paid by the Oklahoma City Mill & Elevator Company. After payment of the drafts and the delivery of the bills of lading to the Oklahoma Company, the grain was destroyed in the storm at Galveston in August, 1915. The issue is as to who is to stand the loss. No question would arise as to the completion of the sale, except for the language in the confirmation:

"Delivery of grain not perfected until grain reaches destination specified and has been inspected and weighed."

There may be a sale without completed or perfected delivery. By delivery of the bills of lading, and by the express terms of the confirmation letter, the Oklahoma Company acquired complete dominion over the property, with the right to change its destination in transit, to sell at this changed destination, or to sell in transit. The Oklahoma Company acquired with reference to it all the rights of ownership. It must be held to have the corresponding obligations and liabilities. As the owner of the property it must stand the loss of its destruction. The contract contemplated that there might be readjustments in weight, and this was what was in the minds of the parties as required for perfecting the delivery at the point of destination. The contract as written leaves the destination uncertain. The phrase "wheat at $1.18½ basis, delivered Galveston," has reference to the price, and was not, within itself, sufficient to name the place of delivery. The order in the letter was to ship to Galveston for export, but the right to change destination of shipment in transit was reserved, and, in any event, Galveston was not the point of ultimate destination. However that may be, it is quite certain that the incidents of ownership passed to the Elevator Company by the payment for the property and the receipt of the bills of lading, and the loss must necessarily fall upon it.

The judgment is reversed, and the cause remanded for proceedings not inconsistent herewith.

Reversed and remanded.

WALKER, Circuit Judge (dissenting). It does not seem to me that the conclusion stated in the foregoing opinion, to the effect that the delivery of the wheat was complete when the buyer got the bill of lading for it, is consistent with the language of the contract, saying that it was sold—

"basis delivered Galveston. * * * Delivery of grain not perfected until grain reaches destination specified and has been inspected and weighed."

The wheat was at the seller's risk until the delivery called for by the contract was complete. The price stated was agreed to be paid, not for wheat delivered to a carrier destined to Galveston, with the right in the buyer to change the destination, but for wheat delivered at the original or substituted destination. When the contract expressly calls for an actual delivery at destination, there is no room for saying that a constructive delivery by furnishing a bill of lading was all that was required to put the subject of the sale at the buyer's risk. It is an everyday occurrence for a seller to get the price of his goods before, by delivery, they cease to be at his risk. It seems to be a fair inference that the sole purpose of the stipulation for the buyer getting the bill of lading on paying the draft for the price was to enable it to get the wheat when it reached its destination, without exposing the seller to the risk of losing the price of it, though it was actually delivered. That stipulation is not at all inconsistent with the existence of an intention that the wheat should remain at the seller's risk until

the actual delivery called for by the contract was complete. After the seller received the price, it could not be harmed by such control over the wheat while in transit as was conferred by delivery of the bill of lading. It seems to me that the failure to make the stipulated actual delivery deprived the seller of the right to retain the price paid.